**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**BRYAN B. JOHNSON,**

**Plaintiff,**

**vs.**

**Case No. C2-04-288**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Terence P. Kemp**

**LAWRENCE A. BELSKIS,**
**et al.,**

**Defendants.**

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint. For the reasons that follow, Defendants' Motion is granted as to Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

**I.**

**A. Factual History**

For purposes of this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes all facts alleged by the Plaintiff in his Amended Complaint as true. Plaintiff, Bryan Johnson ("Johnson"), is a licensed attorney who practices in the Probate Court of Franklin County ("Probate Court"). Defendant Lawrence Belskis, ("Belskis") is the sole judge of that court. Plaintiff alleges that Belskis defamed him and conspired with others to violate his state and federal constitutional rights. Defendants Michael L. Miller ("Miller") and Christiana Reis ("Reis"), and various Jane and John Does are or were employees or appointees of the Probate Court of Franklin

County, Ohio. Plaintiff alleges that these Defendants conspired with Defendant Belskis to violate his state and federal constitutional rights. Plaintiff also named the Probate Court of Franklin County and Franklin County as Defendants.

Plaintiff Johnson is a former employee and magistrate in the Probate Court. Johnson's practice often requires that he appear in the Probate Court of Franklin County, Ohio where Judge Belskis is the sole judge. Initially, Johnson and Belskis had a cordial if not friendly professional relationship, so much so that Belskis introduced his administrative assistant to Johnson whom Johnson eventually married.

After marrying Belskis's assistant, according to Johnson, he began to learn of Belskis's activity in public office which Johnson viewed as ethical misconduct. These activities included allegedly misusing governmental resources for personal and campaign purposes and also granting preferential treatment to attorneys and appraisers on *quid pro quo* bases in return for gifts and benefits for Belskis and his family. (Amend. Compl. ¶ 18).

The Board of Commissioners on Grievances and Discipline, the disciplinary arm of the Ohio Supreme Court, conducted extensive and well-publicized hearings regarding the validity of these alleged ethical violations. On June 20, 2005, the Board issued a twenty-one page opinion dismissing the case against Judge Belskis and finding that the alleged ethical violations were not supported by clear and convincing evidence. *In re Complaint Against Honorable Lawrence A. Belskis*, Case No. 03-111, Board of Commissioners on Grievances and Discipline of the Ohio Supreme Court, at p. 21 (June 20, 2005) ("*In re Belskis*").

After learning of Belskis's purported misconduct, Johnson opposed Belskis's reelection to the Probate Court. Eventually the professional relationship between Johnson and Belskis

deteriorated to the point that Belskis allegedly became personally hostile towards Johnson and his wife. According to Plaintiff, this hostile activity included repeatedly driving by Johnson's home; calling Johnson's unlisted number ; and making comments to Johnson about having applied for a gun permit. As a result of this hostility, Johnson's wife resigned from her position as administrative assistant to Judge Belskis. (Amend. Compl. ¶ 19).

In addition, Belskis allegedly commenced a campaign of ongoing and continuous attacks on Johnson to "destroy" Johnson's law practice. Johnson alleges that Belskis initiated this hate-campaign in order to deter Johnson from revealing his evidence of Belskis's wrongdoing in office and in retaliation for Johnson's opposition to the judge's reelection. (Amend. Compl. ¶ 21) According to Johnson, these ongoing attacks included: (a) refusing to perform judicial duties on Johnson's cases; (b) conducting secret investigations of Johnson to use as evidence against Johnson in his cases before Belskis; (c) secretly conducting an *ex parte* interview of a material witness in one of Johnson's cases; and (d) conducting *ex parte* conferences with adverse counsel in cases in which Johnson was involved to instruct adverse counsel regarding what actions to take against Johnson so as to ensure their success. According to Johnson's Amended Complaint, these attacks continue to this day. (Amend. Compl. ¶ 26).

Johnson eventually made his accusations against Belskis public. These accusations led to an investigation into Belskis's conduct and his use of public funds. In response to Johnson's accusations, Belskis allegedly made false statements about Johnson on February 6 and February 8, 2002 which were published in the *Columbus Dispatch* newspaper on February 9, 2002. In the article, Belskis accused Johnson of a stealing from clients. (Amend. Compl. Ex. A). The Disciplinary Board of the Ohio Supreme Court found that Belskis used "intemperate language" in his remarks to

the newspaper about Johnson's billing practices in a guardianship proceeding. *In re Belskis*, at pp. 7-9; s*ee also Guardianship of Lauder*, 150 Ohio App. 3d 277, 780 N.E.2d 1025 (Ohio Ct. App. 10th Dist. 2002)(setting forth extensive history underlying the bases of the current dispute between Johnson and Belskis and finding that Judge Belskis abused his discretion in conducting his own investigation in the guardianship proceeding). Johnson claims that, as a result of these allegedly defamatory statements, he has incurred damages in excess of $15 million dollars.

**B. Procedural History**

On February 6, 2003, Plaintiff filed his first complaint in Franklin County Common Pleas Court alleging defamation and intentional and negligent infliction of emotional distress. Plaintiff's original complaint named Judge Lawrence Belskis in his personal capacity as the only defendant. Plaintiff dismissed his complaint pursuant to Ohio Civil Rules of Procedure 41(a). Plaintiff then re-filed his complaint in Franklin County Common Pleas Court on March 10, 2004 against Judge Belskis in both his personal and official capacity and against various officials of the Franklin County Probate Court along with numerous John and Jane Does.

This re-filed complaint contained similar allegations as those contained in Plaintiff's original complaint. In addition, Plaintiff asserted several new allegations pertaining to events that had occurred or were discovered after the original state court filing. Defendant Miller removed the action to this Court as Plaintiff's re-filed complaint contained questions of federal law. Defendants then moved for dismissal on all counts. Before a ruling on the motion to dismiss, Plaintiff amended his complaint to correct the problems identified by the Defendants in their motion to dismiss. Defendants again moved for dismissal on all counts of the Amended Complaint.

On August 22, 2005, this Court ordered additional briefing on the issue of absolute immunity as it relates to Plaintiff's claim under Section 1983 against Defendant Judge Belskis. Defendants moved for dismissal of Plaintiff's Section 1983 claims against Judge Belskis on that ground. Plaintiff opposed the Motion on September 9, 2005.

Defendants' Motion to Dismiss the Amended Complaint is now fully briefed and before the Court for disposition.

**II.**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir.1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

**III.**

The Court turns first to the federal claims contained in Plaintiff's Amended Complaint. Plaintiff asserts that his claims under 42 U.S.C. §§ 1985 and 1983 "based upon his membership in the protected class of the individuals who appear in the Probate Court of Franklin, County Ohio. .

. ." (Amend. Compl., ¶ 6.)[1] In this regard, although the case is at the pleadings stage, the Court emphasizes that it need not accept as true the myriad legal conclusions contained in Plaintiff's Amended Complaint. *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir.1990).

**A. Section 1985 Conspiracy Claims**

Count Eleven of Plaintiff's Complaint arises under 42 U.S.C. § 1985. Presumably, Plaintiff brings his cause of action under Section 1985(3), which prohibits a conspiracy to deprive an individual of the equal protection of the laws and provides in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . .in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). To maintain a cause of action under Section 1985(3), Plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir.1994).

---

1 Johnson also purports to make a claim under 42 U.S.C. § 1988. Section 1988 merely provides for attorneys' and experts' fees in civil rights cases and is not a separate cause of action.

For several independent reasons, Count Eleven fails to state a legally sufficient claim upon which relief may be granted. First, Plaintiff asserts that his claim under Section 1985 is "based upon his membership in the protected class of the individuals who appear in the Probate Court of Franklin, County Ohio . . ." (Amend. Compl., ¶ 6.) The Court is unaware of any case law supporting Plaintiff's theory that this "class" of individuals is of the insular type that the civil rights statutes were designed to protect. Plaintiff fails to allege that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidiously discriminatory animus." *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir.2000) (internal quotation marks and citation omitted). Failure to allege membership in a protected class, and discrimination based upon such membership, requires dismissal of Plaintiff's Section 1985(3) claim. *Saunders v. McGhee*, No. 94-4073, 1995 WL 101289, at *1 (6th Cir. March 9, 1995) (unpublished)

Further, Plaintiff's cause of action under Section 1985 must be dismissed because he failed to bring this claim within the requisite statute of limitations. For civil rights actions, federal courts apply the state personal injury statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985).[2] The appropriate statute of limitations for personal injury actions arising in Ohio is two years. *See* Ohio Rev. Code§ 2305.10; *Kuhnle Bros. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir.1997). Because his allegations are so vague and conclusory regarding any conspiratorial conduct

---

[2] Although the Supreme Court has not yet decided the issue, other circuits have determined that actions under Section 1985 should be controlled by the forum state's statute of limitations governing personal injury actions. *Callwood v. Questel*, 883 F.2d 272 (3d Cir. 1989); *Allen v. Gifford*, 462 F.2d 615 (4th Cir. 1972) (applying Virginia's statute of limitations for personal injury suits to § 1982 action). For matters arising in Ohio, courts in the Sixth Circuit apply Ohio Rev. Code § 2305.10 to all civil rights actions. *E.g., Walker v. City of Lakewood*, 742 F. Supp. 429, 430-31 (N.D. Ohio 1990); *Knapp v. City of Columbus*, No. C2-01-255, 2002 WL 193849, *4 (S.D. Ohio Jan. 17, 2002)(unreported).

on the part of the Defendants, discussed more fully below, Plaintiff has not pleaded that Defendants entered into an agreement to violate his rights, shared a general objective to do so or committed an act in furtherance of the conspiracy that caused injury within the requisite statute of limitations.

Finally, in support of his claim, Plaintiff Johnson alleges that Defendants Miller, Reis, and John and Jane Does all conspired with Defendant Belskis in connection with the allegations of his Complaint. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. . . ." *Guitterz v. Lynch*, 826 F.2d 1534, 1538 (1987); *see also Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984) (holding that a conspiracy claim was properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory"). "Conspiracy claims under § 1985(3) must be pleaded with the same specificity as conspiracy claims under § 1983." *Saunders,* 1995 WL 101289 at *1 (citing *Jaco* 739 F.2d at 245)).

Even under the most liberal construction of his Amended Complaint, Plaintiff fails to provide anything more than conclusory allegations of conspiracy. In his Memorandum in Opposition, Johnson points to several paragraphs of his Amended Complaint that are intended to support the material elements of his conspiracy claims. In paragraph 23, Johnson states, "Belskis conspired with Miller, Reis, John Does # 1 through 10 and Jane Does #1 through 7 . . . to carry out these successive and ongoing attacks against Johnson." (Amend.. Complaint ¶ 23). In paragraph 26, Johnson alleges that "Belskis and his Associates alone/and or in concert" issued improper court rulings that were prejudicial to Johnson. (Amend.. Complaint ¶ 26). Johnson further alleges that Belskis and his Associates "conspired and worked together on an ongoing and continuous basis" to maliciously

defame Johnson. (Amend.. Complaint ¶ 61). Johnson alleges that Defendants "conspired and worked together on an ongoing and continuous basis" to violate Johnson's constitutionally guaranteed rights. (Amend. Complaint ¶ 69). These vague allegations of conspiracy are devoid of any factual content and continue throughout Plaintiff's Amended Complaint.

Johnson's allegations of conspiracy are insufficient to state a claim even under the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure. Johnson has not alleged that the named Defendants entered into an agreement to violate his rights or that the Defendants shared a general objective to do so. Instead of identifying who was involved in the conspiracy and describing what the objective of that conspiracy was, Johnson camouflages his lack of detail by using the phrase "Belskis and Associates." (See Amend.. Complaint ¶'s 23, 25, 26, 27, 28, 53, 57, 59, 61). Later references to the purported conspiracy degenerate even further in specificity as Johnson begins to use the more generic term "Defendants" to describe the membership of the conspiracy. These general and conclusory allegation are far too vague to support a Section 1985 conspiracy claim.

Defendants' Motion to Dismiss Plaintiff's Section 1985 claim is therefore **GRANTED**.

**B. Section 1983 Claims**

Plaintiff's Amended Complaint alleges that Defendants violated his federally protected constitutional rights of freedom of speech, due process and equal protection of law. His claims are based on the First and Fourteenth amendments to the United States Constitution as enforced by 42 U.S.C. § 1983.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983. Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved person to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). To plead a Section 1983 claim, a plaintiff must allege both(1) a deprivation of a federal right, and (2) that the person who has deprived him of that right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635 (1980); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).

**1. Conspiracy Under Section 1983**

Throughout his Memorandum in Opposition, Plaintiff asserts that his conspiracy claim arises under 42 U.S.C. § 1983 against all the named and unknown Doe-Defendants, although those allegation are not readily apparent from the near-100 paragraphs of his twenty-three page Amended Complaint. In a claim for a civil conspiracy under 42 U.S.C. § 1983, a plaintiff must plead that (1) the defendants entered into an agreement to violate the plaintiffs' rights; (2) the defendants shared a general objective to deprive the plaintiffs of their rights; and (3) an overt act was committed in furtherance of the conspiracy that caused injury to the plaintiffs. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Conspiracy claims must be pled with some degree of specificity and vague allegations unsupported by material facts do not state a claim under Section 1983. *Id.*; *Gutierrez,* 826 F.2d at 1538-39.

Plaintiff has failed to provide any direct or inferential factual allegations on any of these material elements of his claim. To the extent Plaintiff intended to plead a cause of action for

conspiracy under Section 1983, that claim likewise fails for the same reasons the Court has outlined above with respect Plaintiff's Section 1985 claim as to the conclusory nature of the allegations supporting it.

### 2. Section 1983 Claims Against Defendants Other Than Judge Belskis

As for claims against the individual Defendants for independent violations of Section 1983, the Court cannot countenance Plaintiff's attempt to impute the purported behavior of Defendant Belskis to the remaining Defendants through use of broad-sweeping, overly-inclusive allegations. In sum, Plaintiff's allegations under Section 1983 against the Defendants, other than Defendant Belskis, state that "Defendants' actions, in their multiple capacities, to violate Johnson's constitutional rights were ongoing and continuous through to the date of . . . March 9, 2004 . . . ." Johnson repeats this same phrase for each count under Section 1983 with respect to his claims for violations of his First and Fourteenth Amendments. Repetition of the phrase, however, does not serve to clarify his Section 1983 claims or assist with his obligation to state facts supporting them.

This conclusion applies equally to Plaintiff's claims against Franklin County, the Franklin County Probate Court, and to the Defendants in their official capacities. The Section 1983 claim fails against these entities for the additional reason that Plaintiff has neither pleaded or suggested a factual basis to hold a governmental entity liable under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978). The Sixth Circuit has held that "to satisfy the *Monell* requirements a plaintiff must identify the policy, connect the policy to the [governmental entity] itself and show that particular injury incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (adopting the test articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)).

Finally, Johnson's Section 1983 claims against the Franklin County Probate Court, a division of the Court of Common Pleas, and its officials, in their official capacity, fails for the additional reason that the Eleventh Amendment bars suits for damages unless the state has waived its immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67-68 (1989); *Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Div.*, 276 F.3d 808 (6th Cir. 2002). The Court of Common Pleas is an instrumentality of the state and therefore, under the Eleventh Amendment, cannot be sued for damages in federal court. *Mumford v. Basinsky*, 105 F.3d 264, 269-70 (6th Cir. 1997).

Accordingly, the claims against the individual Defendants other than Defendant Belskis for violations of Section 1983 are **DISMISSED** on these grounds.

**3. Section 1983 Claims Against Judge Belskis**

As for Defendant Belskis, Plaintiff divided his claims into two categories in his Memorandum in Opposition: (1) the alleged defamatory statements made on February 6 and 8, 2002; and (2) claims arising after his dismissal of his original complaint in the Franklin County Court of Common Pleas on March 10, 2003. After the Court ordered additional briefing on the issue of absolute immunity,[3] Plaintiff further segregated Belskis's alleged non-judicial conduct from the purported adverse actions that Belskis took in Plaintiff's cases pending in the probate court.

---

[3] Initially, Defendants did not move to dismiss Plaintiff's Section 1983 claims against Judge Belskis on the basis of absolute judicial immunity. Following the Court's Order directing additional briefing on the subject, Defendants now more for dismissal of the claims against Judge Belskis on the basis of absolute judicial immunity. Plaintiff opposed dismissal based on these grounds.

**a. Defamation**

As for the first category regarding the allegedly defamatory statements made in February, 2002, Plaintiff's claim fails for the reason that he did not bring it within the time permitted by the two-year statute of limitations. Plaintiff's Section 1983 claim for defamation relates to statements made in February, 2002. He did not file his Section 1983 claim until March 9, 2004. *See* Ohio Rev. Code § 2305.10; *Kuhnle*, 103 F.3d at 519.[4]

**b. Conduct Subject to Absolute Judicial Immunity**

As to the second category of Section 1983 claims, Plaintiff has alleged that Belskis "and his Associates," in their official and personal capacities and under color of state law, routinely and continuously denied Plaintiff equal protection of law and violated his substantive and procedural due process rights.

The Complaint alleges improper conduct on the part of Judge Belskis which includes refusing to perform duties on Plaintiff's cases, secretly conducting *ex parte* conferences with opposing counsel to instruct them how to handle cases against Plaintiff, and improperly issuing court orders and entries against Plaintiff on a *sua sponte* basis. (See Amend. Complaint ¶ 25). According to Plaintiff, these actions were a result of the exercise of his constitutional right of free speech, specifically his refusal to support Belskis's reelection or to contribute to Belskis's campaign.

A review of the submissions and the relevant authorities demonstrates that dismissal of Plaintiff's claim is warranted under Rule 12(b)(6) because it fails as a matter of law under Section

---

[4] This analysis relates to Johnson's defamation claim under Section 1983 and not to the underlying state claim against Belskis for defamation. As noted *infra*, the Court declines to exercise supplemental jurisdiction over the state law claim. *See infra* (dismissing federal claims and declining to exercise supplemental jurisdiction over remaining state law claims).

1983 against Judge Belskis. Plaintiff's claim against Judge Belskis is barred on the basis of absolute judicial immunity.

It is well-established that a judge enjoys judicial immunity from suits arising out of the performance of his or her judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994). The Supreme Court has specifically held that state judges are absolutely immune from liability under Section 1983, subject only to an inquiry of whether the judge's activities were "non-judicial" in nature or if the judge's actions are performed without any jurisdiction to do so. *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983); *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity does not apply if the judge's activities were non-judicial or if the judge's actions were performed absent any jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 362-63 (1978).

Here, Judge Belskis contends that neither exception applies to his claim of absolute judicial immunity. As the proponent of the claim of absolute judicial immunity, Judge Belskis bears the burden of establishing that such immunity is warranted. *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

The doctrine of absolute immunity of judges for acts committed within the judicial jurisdiction is a firmly established principle of common law and Section 1983 litigation. *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed 646 (1872); *Pierson,* 386 U.S. at 553-54. This immunity serves to preserve the autonomy and independence of the judiciary "without which no judiciary can either be respectable or useful." *Bradley,* 13 Wall at 346. A judge may be deprived of this protection only for acts taken in "the clear absence of all jurisdiction." *Stump,* 435 U.S. at 356-57. Otherwise, a judge, enjoys absolute immunity, "even where the exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359; *Forrester v. White*, 484 U.S. 219, 227 (1988) (concluding that

a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive.") This immunity is an immunity from suit, not just from ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

What constitutes a judicial act for the purposes of immunity is determined by "whether it is a function normally performed by a judge" and whether the parties understood that they were dealing with the judge "in his judicial capacity." *Stump*, 435 U.S. at 357. To determine if an act is judicial in nature, the Court first must consider whether the conduct in question is a function that is "normally performed by a judge." *Id.* Under this functional approach, the Court must examine the nature and function of the act, not the act itself. Even if a particular act is not a function normally performed by a judge, the Court still must look to the relationship between the act in question and the ordinary functions normally performed by a judge. *Mireles v. Waco*, 502 U.S. 9, 13 (1991). Second, in determining whether an act is "judicial," the Court must assess whether the parties dealt with the judge in his or her judicial capacity. *Id.* at 12. In examining the functions normally performed by a judge, the Court of Appeals for the Sixth Circuit has recognized that "paradigmatic judicial acts," or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997). On the other hand, an action taken by a judge that does not involve adjudication between the parties is less likely to be deemed judicial. *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994).

The record here clearly indicates that Judge Belskis was acting in his judicial capacity at all times when he engaged in the conduct complained of by Johnson and that the parties dealt with Belskis in his capacity as a judge. The adverse conduct at issue here includes delaying Johnson's

cases, conducting *ex parte* conferences with opposing counsel to instruct them how to handle cases against Plaintiff, and improperly issuing court orders and entries against Plaintiff on a *sua sponte* basis.[5] These are paradigmatic adjudicatory functions in an of themselves or otherwise are inextricably interrelated with ordinary functions normally performed by a judge. *See Cameron.,* 38 F.3d at 271 (cautioning against extending reach of judicial immunity but noting a judge's actions with respect to cases pending before him or her are "quintessential judicial act[s]").

Therefore, Judge Belskis is absolutely immune from any suit for damages under Section 1983 for these quintessential judicial acts. Thus Plaintiff's claims in this regard are **DISMISSED** for failure to state a claim upon which relief can be granted. *Imbler v. Pachtman*, 424 U.S. 409 (1976) (holding that dismissal is required if allegations of complaint demonstrate that defendant-official had absolute immunity from the claim).

**b. Non-Judicial Conduct**

Plaintiff Johnson maintains that Belskis is not entitled to absolute immunity for wrongful conduct that was non-judicial in nature. In particular, Plaintiff asserts that his claims against Belskis involve non-judicial activities that fall outside the scope of his work as a probate judge.

Johnson alleges that Belskis violated his Section 1983 rights by activities that were well beyond the scope of his judicial duties as a probate judge. In his Amended Complaint, Johnson alleges that Belskis:

> [I]ntentionally caused Johnson to fear for his family's safety by driving by Johnson's home, calling John's unlisted home telephone number, following Johnson's family, making Johnson aware that he had applied for a gun permit to purchase a gun, all accompanied by Belskis' erratic and unpredictable behavior. . . . Because of this fear

---

[5] All of these claims would also be grounds for direct appeal of the judicial conduct Plaintiff cites in his Complaint.

of physical harm Johnson's wife abruptly resigned from the Probate Court.

(Amend. Compl., ¶¶ 19-20.) Although Johnson does not indicate when this alleged behavior occurred, the public record[6] of Belskis's disciplinary proceedings indicate that Belskis's secretary, Ingrid Johnson (Plaintiff Johnson's wife) resigned in November 1999. *In re Complaint Against Honorable Lawrence A. Belskis*, Case No. 03-111, Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio, at p. 15 (June 20, 2005).

Plaintiff's Section 1983 claim against Belskis for alleged non-judicial activity fails for the reason that he failed to bring them within the time permitted by the two-year statute of limitations. Johnson alleges that Belskis effectively "stalked" him and his family, causing such fear that his wife abruptly resigned. Mrs. Johnson resigned in November, 1999. Plaintiff did not he did not file his Section 1983 claims until March 9, 2004. *See* Ohio Rev. Code§ 2305.10; *Kuhnle,* 103 F.3d at 519. These claims, therefore are **DISMISSED.**

**C. State Law Claims**

Because Plaintiff's federal claims are disposed of by this Order, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's state law claims are **DISMISSED** without prejudice. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)("If the federal claims are dismissed

---

6 As matters of public record, the Court may take these documents into account on this motion to dismiss without converting it to one for summary judgment by considering matters outside the pleadings. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("'In determining whether to grant a 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997))); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990).

before trial . . . the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).

IV.

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. #19) is **GRANTED** as to Plaintiff's federal claims. As the Court declines to exercise supplemental jurisdiction, Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to remove this case from the Court's pending cases and motions list.

**IT IS SO ORDERED.**

9-30-2005
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**